UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE VASQUEZ, | No.  2:22-cv-00128-TLN-KJN |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| RON GODWIN, | |
| Respondent. | |

I.  Introduction

Petitioner Jorge Vasquez is a state prisoner, proceeding with counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2017 conviction for three counts of lewd and lascivious acts (Cal. Penal. Code § 228(a)).  Petitioner was sentenced to 25 years in state prison.  Petitioner claims that the state court's removal of petitioner's "mistake in person" defense from jury consideration violated his right to due process, present a defense, jury trial, and to be free from ex post facto decisions under the Constitution. After careful review of the record, this court concludes that the petition should be denied.

II.  Procedural History

On November 7, 2016, a jury found petitioner guilty of three counts of lewd and lascivious acts upon a child younger than 14.  (ECF No. 12-1 at 228-32.)  The trial court sentenced petitioner to 25 years in state prison.  (Id. at 297-98.)

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District.  (ECF No. 12-9.)  The Court of Appeal affirmed the conviction on April 20, 2021.  (ECF No. 12-12.)

Petitioner filed a petition for review in the California Supreme Court, which was denied on July 28, 2021.  (ECF Nos. 12-13 & 12-14.)

Petitioner filed the instant petition on January 20, 2022.  (ECF No. 1.)  Respondent filed an answer.  (ECF Nos. 11 & 12.)  Petitioner filed a traverse.  (ECF No. 17.)

III.  Facts[1]

After independently reviewing the record, this court finds the appellate court's summary accurate and adopts it herein.  In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> In October 2016, defendant was charged with three counts of lewd and lascivious acts on Amber S., a child under the age of 14 years (§ 288, subd. (a)—counts one through three), burglary (§ 459—count four), and annoying and molesting Kinsey Doe, a child under 18 years of age (§ 647.6—count five). For counts one through three, it was alleged that defendant committed the offenses during the course of a burglary. (§ 667.61, subds. (e)(2) & (j)(2).) It was further alleged that defendant had suffered a prior strike (§§ 667, subds. (b)-(i), 1170.12), and had served a prior prison term (§ 667.5, subd. (b)). The following evidence was adduced at trial.
>
> **A. *The Kinsey Doe Incident***
>
> In January 2013, Kinsey Doe was in the sixth grade in Sacramento. On the evening of January 30, Kinsey was on the school campus after hours to attend a drawing class; not many people were on the campus at that time. She walked towards the front of the school grounds and saw a Hispanic man, later identified as defendant, in a white car. He asked her if she had seen his girlfriend who went to the school; Kinsey thought this was strange because defendant appeared to be a lot older than other students at her school. She did not recognize the name of defendant's supposed girlfriend, and walked away.
>
> A short time later, Kinsey encountered defendant again on campus. Defendant asked Kinsey if she could help him find his girlfriend, and she agreed.  They began walking back towards the direction of

---

[1]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in <u>People v. Vasquez</u>, No. C083816, 2021 WL 1540908 (Cal. Ct. App. Apr. 20, 2021), a copy of which respondent lodged as ECF No. 12-12.

defendant's car. Kinsey became uneasy and stopped; she told defendant she had to retrieve a clipboard and turned around and ran. Kinsey found an afterschool worker and told him that she was scared because defendant had wanted her to follow him. The afterschool worker confronted defendant, and defendant told him that he was on campus to pick up his seventh-grade sister from a basketball game. The afterschool worker told defendant that the elementary school did not have seventh graders and that he had to leave. Defendant then left the school.

**B. *The Amber S. Incident***

In March 2013, B.D. lived in an upstairs, two-bedroom apartment in Sacramento with her 12-year-old daughter, Amber, and her 21-year-old daughter, A.M. A.M.'s boyfriend and her one-year-old son also lived in the apartment. B.D. and Amber shared one bedroom, while A.M., her boyfriend, and her young son shared the other. At the time, Amber was in the sixth grade, and she was about five feet tall and weighed almost 90 pounds; A.M. was about five feet four inches tall and weighed about 150 pounds.

Around 1:00 a.m. on March 3, 2013, B.D. was standing outside her apartment downloading a movie for Amber, who was already asleep in bed. Defendant walked by and asked her what she was doing.[2] Defendant told her that the Wi-Fi connection was better closer to the apartment complex clubhouse. B.D. and defendant walked to the clubhouse, which was about 100 yards away from B.D.'s apartment. She did not lock the apartment door.

[N.2 B.D. was unable to positively identify defendant at trial as the man who approached her, although she testified that the man said his name was Jorge.]

At the clubhouse, defendant asked B.D. if she wanted to smoke marijuana. She responded that she did, and defendant said he would go get his marijuana and return so they could smoke. He gave B.D. his cell phone number, and told her to call him so she did not have to walk back to her apartment alone.

B.D. remained at the clubhouse for about 10 or 15 minutes. As she walked back towards her apartment, she ran into defendant; he was carrying a small cigar box with marijuana. They went back to her apartment to smoke. B.D. found Amber behind the now locked front door extremely upset and hyperventilating. When Amber saw defendant with her mother, she ran and locked herself in the bathroom; B.D. followed.

Amber told her mother that defendant had just touched her, although she did not divulge in detail what he had done. B.D. then told defendant that he had to leave. Defendant asked if she wanted him to talk to Amber, but B.D. declined and defendant left the apartment. B.D. called the police.

Officers responding to the scene a short time later conducted a field show-up with Joe Gomez, a man who lived in the apartment

3

downstairs. Amber said Gomez was not the man who had assaulted her.[3] Later that morning, a sexual assault examination was conducted on Amber at the hospital and DNA swabs were taken. DNA taken from a moist secretion from Amber's genitalia matched defendant's DNA; Gomez was excluded as a potential contributor to the recovered DNA sample.[4]

[N.3 Officers conducted a separate field show-up with B.D.; she originally said that she thought Gomez was the man she had talked to outside her apartment, but later said she was not sure that was correct. Approximately a year later, after the DNA sample recovered from Amber tentatively matched defendant's DNA in a law enforcement database, Detective Janine Lerose conducted separate photo lineups with Amber and her mother; neither Amber nor B.D. were able to identify defendant in the photographic lineup.]

[N.4 About a year after the assault, in February 2014, a forensic sexual assault specialist trained in performing sexual assault examinations conducted a Special Assault Forensic Evaluation (S.A.F.E.) interview with Amber. A video recording of the S.A.F.E. interview was played for the jury. Following Amber's S.A.F.E. interview, Detective Lerose interviewed defendant in April 2014. A video recording of defendant's interview was also played for the jury. Neither video interview is included as part of the record on appeal.]

Amber testified that the day before the incident, she and her mother were home, and her sister, nephew, and her sister's boyfriend were away visiting his family. She went to bed that night fully clothed and climbed under the covers. The television was on, and the bedroom door was slightly closed. The room was dark except for the light from the television and some light from an outside streetlamp.

At some point, Amber sensed that someone had entered the room and she thought it was her mother. She felt someone crawl on the bed, and then she fell back to sleep. She awoke to someone licking her vagina. Her pants and underwear were pulled down, and the blankets that had covered her were pushed to the side. She looked down and saw defendant with his body half on the bed.

According to Amber, defendant also touched her breasts with his hands and tongue. Defendant then moved off the bed, grabbed her hand, and tried to have her touch his exposed penis. She pulled her hand away. Defendant also kissed Amber on the mouth. At some point, he also touched her vagina with his hand.

Defendant asked Amber how old she was, and she told him 12. According to her trial testimony, defendant asked her age before he touched her breast.[5] During cross-examination, however, Amber testified that defendant left immediately after asking her age. Defendant told Amber not to tell anyone or else he would go to jail for a long time. She estimated that the entire assault lasted four or five minutes before defendant left the apartment.

[N.5 Officer Jonathan Monroe, who responded to the scene and interviewed Amber, testified that Amber did not report that any sex

4

acts occurred after defendant had asked her age.]

Amber had seen defendant before the incident hanging around Gomez's downstairs apartment with several other men in their twenties. On several occasions he had made her feel uncomfortable, either calling out to her to come to the downstairs apartment, watching her play, or following her through the apartment grounds. Amber did not know defendant, and she never saw her mother interact with any of the men in the downstairs apartment, although she did hear A.M. once ask them for broccoli.

A.M. testified that she was acquainted with the men in the downstairs apartment as they would sometimes flirt with her when she walked by, but none had ever been to her apartment. Gomez did most of the flirting, and she thought he was cute. She initially did not remember ever asking defendant for broccoli, but later testified that she had asked defendant for broccoli to use in a meal; she denied that the term broccoli was slang for marijuana. A.M. also denied ever telling defendant that when her boyfriend's truck was gone, that they could do something together or party, or that he should bring marijuana to her apartment.

## C. *The Defense*

Defendant testified on his own behalf.[6] Regarding the incident with Kinsey, defendant said that he was hanging out at Gomez's apartment selling marijuana on January 30, 2013, when his father called him and asked him to pick up his younger sister at an unidentified school somewhere off Folsom Boulevard. He went to one school and was told that his sister was not there; he then went to another school and saw Kinsey. Defendant asked Kinsey if she knew a girl named Jennifer (his sister), and she said no but that she would help him look for her. He denied ever telling Kinsey that he was 16 or that he had a girlfriend at the school.

[N.6 During his testimony, defendant admitted that he had been convicted of a prior felony attempted robbery and had been incarcerated for the offense.]

Regarding the incident involving Amber, defendant testified that A.M. would sometimes flirt with him and the other men hanging out in Gomez's apartment. On one occasion, A.M. told defendant he was cute and that they should hang out. On another, she asked him for "steamed broccoli," which he understood to mean to smoke marijuana with her. According to defendant, A.M. also told him that when her boyfriend's truck was not there, that it was "all good," which he testified meant that "she could do pretty much whatever she wanted with whomever she wanted ...."

In the early morning hours on March 3, 2013, defendant left Gomez's apartment to go home after a night of drinking at a nightclub and smoking marijuana. On the way to his car, B.D. approached him and asked if he had any marijuana that they could smoke together. Defendant returned to Gomez's apartment to get marijuana. He did not return to the clubhouse where B.D. was using the Wi-Fi to

download a movie, however. Instead, defendant went to B.D.'s apartment because he said he saw that A.M.'s boyfriend's truck was not at the apartment complex, and he figured based on his previous conversations with A.M., that he was "good to go with her." At the time, he intended to have sex with A.M.

When he arrived at B.D.'s apartment he knocked on the door and it opened. Defendant testified that he was calling A.M.'s name when he entered, and he heard "a vague vocal sound" from one of the bedrooms. He walked through the kitchen and living room, which were brightly lit, and into a "really dark" bedroom with the television on. There, he saw a person in bed under the covers. He thought the person was A.M.

Defendant sat on the bed and asked whether he could get in bed; the person responded yes. He got under the blankets and started kissing the person on the mouth. According to defendant, the person "somewhat kissed me back." Defendant told the person that he could be her new boyfriend and come back whenever her actual boyfriend was gone. She did not respond.

Defendant began to initiate sex by touching the person's vagina. He then pulled her pants down while she lifted her body to make it easier for him to pull her clothes off. Defendant then began orally copulating the person. Defendant had trouble breathing under the blankets, so he pushed them aside. At that point, defendant noticed that the person was not a grown woman, but "a little girl." Defendant testified that he was shocked, and asked how old the girl (Amber) was. Amber responded that she was 12 years old, and defendant told her he was sorry. He told Amber not to tell anyone or else he would go to jail for a very long time. He then left the apartment.

Defendant denied ever touching Amber's breasts. He estimated he was in the bedroom for about two to two and a half minutes. Although A.M. was several inches taller than Amber and weighed nearly 50 pounds more than her, defendant testified that he did not notice the difference in size when he engaged in sexual acts with Amber.

On cross-examination, defendant admitted that he did not have A.M.'s phone number and that he had never been inside her apartment before. He conceded that he had never talked to A.M. about coming to her apartment on March 3, but claimed based on their previous conversation about her boyfriend's truck that she was "locked in" and ready to have sex with him.

Defendant conceded that he had lied to police when he was interviewed about the incident, claiming that he had never been to the apartments and that he did not know Gomez, B.D., or her daughters. Defendant also acknowledged that he never told officers that he thought he was engaging in sexual acts with A.M. rather than Amber.

6

### D. *Closing Arguments and Jury Instructions*

At closing, defense counsel argued that defendant was not guilty of the sexual offenses against Amber because he mistakenly believed she was A.M. While he conceded a mistake of fact as to a minor's age was not a defense to such charges, he asserted that a mistake in identity was a complete defense.

In rebuttal, the prosecutor argued that mistake of identity was not a defense to the lewd and lascivious conduct charges involving Amber. Otherwise, a person could simply touch a child but claim he was trying to touch an adult. The prosecutor encouraged the jury to write the judge a note during deliberations asking whether mistake of a person was a defense, and he predicted that the court would respond in the negative.

Based on CALCRIM No. 1110, the court instructed the jury that to find defendant guilty of the three counts of lewd and lascivious acts on Amber under section 288, subdivision (a), the prosecutor had to prove beyond a reasonable down that (1) defendant willfully touched any part of a child's body either on the bare skin or through the clothing; (2) he committed the act with the intent of arousing, appealing to or gratifying the lust, passions, or sexual desires of himself or the child; and (3) that the child was under the age of 14 years at the time of the act. The court further instructed the jury that someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else or gain any advantage. Actually arousing, appealing to or gratifying the lust, passions or sexual desires of the perpetrator or child was not required, nor was it a defense that the child may have consented to the act.

The trial court did not sua sponte instruct the jury as to mistake of fact regarding a person's identity, nor did defendant request such an instruction during the jury instruction conference.

### E. *The Verdicts, New Trial Motion, and Sentencing*

During deliberations, the jury sent question No. 1 stating: "We would like to know if 'Mistake of Person' [is] a valid defense for counts 1, 2, 3. [¶] We reviewed jury instructions." The trial court responded that "[a] 'mistake in person' is not a defense to the crime of violating [section] 288[, subdivision] (a), but can be considered on the issue of intent as to the special findings attached to Counts 1 through 3."

Shortly thereafter, the jury returned verdicts finding defendant guilty of counts one through three, committing lewd and lascivious acts on Amber, and not guilty of the remaining charges. The jury also found not true the burglary enhancements attached to counts one through three. Defendant subsequently waived a trial on his prior conviction and admitted that he had previously been convicted of attempted robbery, which qualified as a strike and a prior prison term.

Prior to sentencing, defendant filed a new trial motion arguing that mistake of identity, as opposed to mistake of age, was a defense to a

7

1  charge of committing lewd and lascivious acts on a child under 14
   years of age, and that the court erred by not so instructing the jury.
2  At the hearing on the new trial motion, the court found that a mistake
   of identity defense was not a defense to a section 288 charge; it also
3  found defendant's testimony regarding his supposed arrangement to
   have sex with A.M. whenever her boyfriend's truck was not at the
4  apartment complex was "ludicrous" and not believable.

5  After denying the new trial motion, the court sentenced defendant to
   the aggregate term of 25 years in state prison, including the upper
6  term of eight years on count one, doubled to 16 years for defendant's
   strike prior, plus consecutive terms of two years each for counts two
7  and three (one-third the midterm), doubled to four years each for the
   strike prior, plus a consecutive one year for defendant's prior prison
8  term. Defendant filed a timely notice of appeal.

9  (ECF No. 12-12 at 2-11.)

10  IV.  Standards for a Writ of Habeas Corpus

11       An application for a writ of habeas corpus by a person in custody under a judgment of a

12  state court can be granted only for violations of the Constitution or laws or treaties of the United

13  States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation

14  or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire,

15  502 U.S. 62, 67-68 (1991).

16       Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

17  corpus relief:

18       An application for a writ of habeas corpus on behalf of a person in
     custody pursuant to the judgment of a State court shall not be granted
19   with respect to any claim that was adjudicated on the merits in State
     court proceedings unless the adjudication of the claim -
20
         (1) resulted in a decision that was contrary to, or involved an
21   unreasonable application of, clearly established Federal law, as
     determined by the Supreme Court of the United States; or
22
         (2) resulted in a decision that was based on an unreasonable
23   determination of the facts in light of the evidence presented in the
     State court proceeding.
24

25  28 U.S.C. § 2254(d).

26       For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of

27  holdings of the Supreme Court at the time of the last reasoned state court decision.  Thompson v.

28  Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45

8

1  (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S.

2  362, 412 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly

3  established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859

4  (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may

5  not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a

6  specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, 133 S.

7  Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)).

8  Nor may it be used to "determine whether a particular rule of law is so widely accepted among

9  the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct."

10  Id.  Further, where courts of appeals have diverged in their treatment of an issue, there is no

11  "clearly established federal law" governing that issue.  See Carey v. Musladin, 549 U.S. 70, 77

12  (2006).

13       A state court decision is "contrary to" clearly established federal law if it applies a rule

14  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

15  precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

16  Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant

17  the writ if the state court identifies the correct governing legal principle from [the Supreme

18  Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[2]

19  Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); see also Chia v.

20  Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, "a federal habeas court may not issue

21  the writ simply because that court concludes in its independent judgment that the relevant state-

22  court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

23  application must also be unreasonable."  Williams, 529 U.S. at 411; see also Schriro v. Landrigan,

24  550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court,

25  in its 'independent review of the legal question,' is left with a "'firm conviction'" that the state

26  _____

27  [2]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,

28  384 F.3d 628, 638 (9th Cir. 2004)).

9

court was '"erroneous"'").  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  Id. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely."  Id. at 99-100.  Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98).  If a state court fails to adjudicate a component of the petitioner's federal claim, the component is

1   reviewed de novo in federal court.  See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

2          Where the state court reaches a decision on the merits but provides no reasoning to

3   support its conclusion, a federal habeas court independently reviews the record to determine

4   whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

5   Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

6   review of the constitutional issue, but rather, the only method by which we can determine whether

7   a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

8   reasoned decision is available, the habeas petitioner has the burden of "showing there was no

9   reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

10          A summary denial is presumed to be a denial on the merits of the petitioner's claims.

11   Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze

12   just what the state court did when it issued a summary denial, the federal court reviews the state

13   court record to "determine what arguments or theories . . . could have supported the state court's

14   decision; and then it must ask whether it is possible fairminded jurists could disagree that those

15   arguments or theories are inconsistent with the holding in a prior decision of [the Supreme]

16   Court."  Richter, 562 U.S. at 101.  It remains the petitioner's burden to demonstrate that 'there

17   was no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d 925, 939

18   (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

19          When it is clear, however, that a state court has not reached the merits of a petitioner's

20   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

21   habeas court must review the claim de novo.  Stanley, 633 F.3d at 860 (citing Reynoso v.

22   Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

23   V.  Petitioner's Claim

24          A.  Claim One: Jury Instructional Error

25          Petitioner's sole claim for habeas relief is that the state court's removal of petitioner's

26   "mistake in person" defense from jury consideration violated his rights to due process, present a

27   defense, a jury trial, and to be free from ex post facto judicial decisions.  (ECF No. 1. at 20, 28-

28   54; ECF No. 17.)  He asserts that the trial judge should have sua sponte instructed the jury on

1   "mistake of person" defense and that the trial judge erred when he told the jury that the "mistake

2   of person" defense did not apply to the three counts of lewd and lascivious conduct.  (Id. at 20.)

3   At trial, petitioner's sole defense was that he entered the apartment with the intent to engage in

4   consensual sexual activity with A.M., an adult female. (Id.)

5         In response, respondent argues that the state court's denial of the instructional error claim

6   is a matter of state law binding on this court, and petitioner cannot demonstrate prejudice.  (ECF

7   No. 11 at 16-23.)

8         In the last reasoned opinion, the state court evaluated petitioner's claim on direct appeal

9   and rejected it as follows:

> Defendant contends the trial court erred and violated his federal and
> state constitutional rights by failing to instruct the jury on a mistake
> of fact defense for the lewd and lascivious conduct counts (counts
> one through three). He argues that mistake of fact as to a person's
> identity, rather than their age, is a defense to a charge of committing
> a lewd and lascivious act on a child under 14 years of age. In his
> view, substantial evidence supported giving a mistake of fact
> instruction because he testified that he believed he was engaging in
> sexual acts with A.M. and not Amber, and the trial court prejudicially
> erred in declining to so instruct the jury. He further contends that the
> court engaged in an impermissible credibility determination when it
> found his testimony that he thought Amber was actually A.M. not
> credible.
>
> "In criminal cases, even in the absence of a request, a trial court must
> instruct on general principles of law relevant to the issues raised by
> the evidence and necessary for the jury's understanding of the case."
> (People v. Martinez (2010) 47 Cal.4th 911, 953; People v.
> Breverman (1998) 19 Cal.4th 142, 154.) A trial court is required to
> instruct sua sponte on any defense only when there is substantial
> evidence supporting the defense, and the defendant is either relying
> on the defense or the defense is not inconsistent with the defendant's
> theory of the case. (People v. Gutierrez (2009) 45 Cal.4th 789,
> 824; People v. Villanueva (2008) 169 Cal.App.4th 41, 49.) Evidence
> of a defense is sufficiently substantial to trigger a trial court's duty to
> instruct on it sua sponte if it is sufficient for a reasonable jury to find
> in favor of the defense. (People v. Salas (2006) 37 Cal.4th 967, 982.)
> However, when a defendant presents evidence attempting to negate
> or rebut the prosecution's proof of an element of the offense, a
> defendant is not presenting a special defense invoking sua sponte
> instructional duties. (People v. Anderson (2011) 51 Cal.4th 989, 996-
> 997.) While a trial court may have a duty to give a pinpoint
> instruction relating the evidence to the elements of the offense and to
> the jury's duty to acquit a defendant if the evidence produces
> reasonable doubt, such a pinpoint instruction is not required to be
> given sua sponte and must be given only upon request. (Ibid.)

Section 26 codifies the defense of mistake of fact. It "provides in pertinent part that persons who 'committed the act or made the omission charged under an ignorance or mistake of act, which disproves a criminal intent,' are not criminally liable for the act. Put another way, people do not act unlawfully if they commit acts based on a reasonable and honest belief that certain facts and circumstances exist which, if true, would render the act lawful. [Citations.]" (*People v. Reed* (1996) 53 Cal.App.4th 389, 396.)

The mistake of fact defense, as a matter of public policy, does not apply to the commission of a lewd act on a child under the age of 14 years, the crime of which defendant was convicted here. (*People v. Olsen* (1984) 36 Cal.3d 638, 647-648 (*Olsen*).) While the Supreme Court has recognized that an accused's good faith, reasonable belief that a victim was 18 years or more of age was a defense to a charge of statutory rape (*People v. Hernandez* (1964) 61 Cal.2d 529, 536), *Olsen* declined to extend the defense to section 288 charges. (*Olsen,* at p. 647.) In doing so, the court explained that *Hernandez* had cautioned that its holding was not " 'indicative of a withdrawal from the sound policy that it is in the public interest to protect the sexually naive female from exploitation.' " (*Olsen,* at p. 644.) Extending a mistake of age defense to section 288, the court reasoned, would undermine that important public policy of protecting children under the age of 14 who are particularly in need of special protection given their tender years. (*Olsen,* at pp. 647-648.)

The fact that under common law "'"'an honest and reasonable belief in the existence of circumstances, which, if true, would make the act for which the person is indicted an innocent act, ha[d] always been held to be a good defense[,]'"'" did not convince the court that the same rule should apply to section 288 charges; instead, it found that the strong public policies underlying section 288 compelled a different rule for such violations. (*Olsen, supra,* 36 Cal.3d at p. 649.) "The legislative purpose of section 288 would not be served by recognizing a defense of reasonable mistake of age. Thus, one who commits lewd or lascivious acts with a child, even with a good faith belief that the child is 14 years of age or older, does so at his or her peril." (*Ibid.*)

Defendant attempts to distinguish *Olsen* by arguing that the case dealt only with a *mistake of age* and not a mistake in the victim's identity. He cites no California authority directly on point, and, in fact, defendant acknowledges that in *People v. Tober* (1966) 241 Cal.App.2d 66, 67-68, 72-73 (*Tober*), which the Supreme Court cited with approval in *Olsen* (*Olsen, supra,* 36 Cal.3d at p. 647), the court upheld the defendant's conviction for violating section 288 under strikingly similar circumstances to those present in the instant case. Like defendant did here, the defendant in *Tober* testified that he entered a dark bedroom where a person (the minor victim) was lying in bed; he believed the victim to be a *different person* who was an adult woman. (*Tober,* at p. 68.) The defendant pulled up the person's nightgown and placed his finger in her vagina to obtain sexual satisfaction. (*Ibid.*) After he did so, the person uncovered her face and the defendant saw it was a child; he immediately withdrew his

finger, asked her age, and was told that she was 10 years old. (*Ibid.*)

The *Tober* court noted that the defendant's arguments on appeal were almost entirely based upon the theory that if he in good faith believed that the 10-year-old child was *a different and adult person*, he could not be held guilty of the crime of committing lewd and lascivious acts upon the body of a child under the age of 14 years with the intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of himself or the child. (*Tober supra,* 241 Cal.App.2d at pp. 72-73.) After "giv[ing] careful, thorough consideration to defendant's contentions predicated upon a claimed belief that the person sexually molested by him was a mature woman," the court "[did] not accept the premise that sexually motivated fondling of the private parts of a 10-year-old child may be indulged in under a claimed good faith belief that the child is either an adult or has reached the age of 14 years." (*Id.* at p. 73.) "The very refusal to distinguish between a child of tender years and an adult may be said to be characteristic of some of those who engage in the sort of conduct of which [the] defendant has been convicted." (*Ibid.*)

While defendant argues that *Tober* rejected defendant's claims solely on the ground that the courts would not countenance a claim as to the mistake of the age of the victim, we do not believe *Tober* can be read so narrowly. The court was well aware that the defendant claimed he believed the child victim was *another woman in the house at the time*, who happened to be an adult. (*Tober, supra,* 241 Cal.App.2d at pp. 72-73 [describing the defendant's theory that he had a good faith belief the child "was a different and adult person"].) Thus, the thrust of his argument was not that he was mistaken as to the child's age, but that he was mistaken as to her identity—the claim defendant raises here. Although the court did not directly address whether the mistake of identity defense was available (*Id.* at pp. 68-72), the court's analysis appears to reject the notion that a mistake of identity is a defense to a section 288, subdivision (a) charge.[7]

[N.7 The defendant in *Tober* raised the following issues on appeal: whether the trial court committed reversible error when it stated during voir dire that the defendant had the presumption of innocence until that presumption was dispelled by the introduction of evidence by the People; whether the court erred in allowing the prosecutor to ask leading questions of the minor victim; the admissibility of a statement the defendant made to an officer after being advised of his rights; whether the court improperly interfered during the defendant's cross-examination of the officer; whether the court erred in failing to give an instruction on voluntary admissions or confessions; and whether the court erred in refusing to give a requested instruction on the applicable burden of proof. (*Tober, supra,* 241 Cal.App.2d at pp. 68-72.)]

To support his position, defendant relies primarily on *United States v. Adams* (C.M.A. 1991) 33 M.J. 300 (*Adams*), a decision from the United States Court of Military Appeals. While defendant concedes that *Adams* is not binding on this court, he argues the case is persuasive authority for extending the mistake of fact defense based on a mistake in a person's identity to section 288 charges.

In *Adams*, the appellate court set aside a soldier's guilty plea to having carnal knowledge of his 15-year-old niece as improvident after finding that a mistake as to his sex partner's identity was a viable defense to the carnal knowledge charge. (*Adams, supra,* 33 M.J. at pp. 300-301.) According to the providence inquiry, the soldier went home after a long duty shift, consumed alcohol, and fell asleep in his own bed in a dark room; his wife was at work at the time. (*Id.* at pp. 300, 302.) The soldier's 15-year-old niece, who lived in his home, entered his bedroom and slipped into his bed, intending to have sexual relations with him. (*Id.* at pp. 300-301.) In a state of semi-awareness, the soldier believed his wife was in their bed with him and was initiating sex. (*Ibid.*) As he usually did under the circumstances, the soldier turned over and engaged in intercourse. (*Id.* at p. 301.) Once he realized it was his niece, he immediately stopped. (*Ibid.*)

The military appellate court found that the facts reasonably raised an unresolved issue of mistake of fact, and it concluded that such a mistake as to a sex partner's identity was a legal defense to the crime of carnal knowledge. (*Adams, supra,* 33 M.J. at p. 301.) Because the court found that the soldier's version of events was not so outlandish as to be absurd, his claim could not be rejected as unreasonable as a matter of law; instead, that evaluation was one for the trier of fact. (*Id.* at p. 303.)

*Adams* is distinguishable. There, the niece who initiated sexual relations with her uncle while he was asleep in his own bed was not a minor of tender years. (*Adams, supra,* 33 M.J. at pp. 300-301.) The military court thus had no occasion to consider the important public policy considerations underlying section 288 in recognizing the viability of a mistake in identity defense to the carnal knowledge charge involving a minor who was not of tender years. Like in *Olsen*, we are not convinced that the same rule should apply for lewd and lascivious conduct with a child under 14 years; instead, the strong public policies for protecting children of tender years compels a different result. (*Olsen, supra,* 36 Cal.3d at p. 649.)

Nor are we persuaded by defendant's argument that *In re Jennings* (2004) 34 Cal.4th 254 (*Jennings*) supports reaching a contrary conclusion. At issue in *Jennings* was whether a mistake of fact as to age defense was available for a violation of Business and Professions Code section 25658, subdivision (c), which prohibits the purchase of an alcoholic beverage for someone under 21 years old who then causes great bodily injury or death to another. (*Jennings,* at p. 259.) There, the defendant provided a 19-year-old work colleague with beer; the work colleague got into a car accident injuring people after leaving the defendant's house. (*Id.* at pp. 259-260.) The Supreme Court held that even though knowledge of the person's age was not an element of the crime, the defendant was entitled to assert a mistake of fact as to age to defend against the charge. (*Id.* at p. 259.)

A violation of Business and Professions Code section 25658 is a misdemeanor punishable in county jail for a minimum of six months, by a fine of up to $1,000, or both. (Bus. & Prof. Code, § 25658, subd. (e)(3).) By contrast, committing lewd acts on a child under 14 years

15

of age under section 288 is a felony punishable by three, six, or eight years. (§ 288, subd. (a).) This drastic difference in punishment, we believe, shows that the Legislature has deemed protecting children of a tender age—those under 14 years—from lewd sexual conduct by exploitive persons a much graver concern than providing an alcoholic beverage to someone below the legal drinking age, such as the 19-year-old work colleague in *Jennings*. This is so even if that underage drinker causes serious bodily harm or death. (Bus. & Prof. Code, § 25658, subds. (c), (e)(3).)

While both statutes have laudable goals of protecting young persons from various ills of society, the Legislature has chosen to punish lewd and lascivious conduct against a child under 14 years of age much more harshly. That choice is indicative of the important public policy of providing special protection to young, naïve children from lewd conduct or other sexual trauma, which can have a lasting, negative impact on a young person. (*Olsen, supra,* 36 Cal.3d at pp. 647-648.)

Adopting defendant's position would undermine the purpose the Legislature sought to achieve by enacting section 288, subdivision (a). In light of these important public policies, and consistent with *Olsen* and *Tober*, we conclude defendant was not entitled to an instruction on mistake of fact based on mistake of identity as it related to the three counts of committing lewd and lascivious acts on Amber, who was 12 years old. (See, e.g., *People v. Paz* (2000) 80 Cal.App.4th 293, 298 [noting that "the public policy rationale of *Olsen* for rejecting good faith mistake of age in section 288 cases involving victims under age 14 holds true for victims of ages 14 and 15 as well—'to protect children against harm from amoral and unscrupulous [adults] who prey on the innocent' "]; see also *People v. Richards* (2017) 18 Cal.App.5th 549, 564 ["The defense of mistake of fact is not appropriate where its recognition would excuse behavior that violates a strong public policy"].) The trial court did not err or violate defendant's constitutional rights by refusing to give a mistake of fact instruction, nor did it err by instructing the jury that mistake of person was not a defense to counts one through three or by denying the new trial motion on that same basis.[8]

[N.8 Given our conclusion, we need not decide whether substantial evidence supported giving a mistake of fact instruction had it been available.]

(ECF No. 12-12 at 11-17.)

Petitioner alleges that his right to due process, present a defense, and a fair trial were violated when the trial court erred in refusing to instruct on petitioner's "mistake in person" defense. Whether the state court erred in "extending the rule to his case" and "preventing the jury from considering" the defense depends on California law. The state court held that "[t]he mistake of fact defense, as a matter of public policy, does not apply to the commission of a lewd act on a

16

child under the age of 14 years, the crime of which defendant was convicted here." (ECF No. 12-12 at 12.) Federal habeas corpus relief is only available for violations of federal law. See Wilson, 562 U.S. at 5; Estelle, 502 U.S. at 67-68. It is axiomatic that a state court's interpretation of state law is binding on a federal habeas court. Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); Estelle, 502 U.S. at 71-72. Petitioner cannot transform a state law issue into a federal issue by blanketly claiming a violation of due process. Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996). To the extent petitioner's raises a state law error claim, habeas relief is not warranted.

Petitioner also raises a federal due process claim. Federal habeas relief is only available if "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Estelle, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of instructions as a whole and the trial record." Id. The constitutional significance of an omitted instruction must be evaluated "by comparison with the instructions that were given," and an omitted or incomplete instruction "is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155-56 (1977).

"As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988); Larsen v. Paramo, 700 F. App'x 594, 596 (9th Cir. 2017) (noting that the Supreme Court in Mathew merely recites a general proposition of federal criminal procedure; "it did not recognize a constitutional right to a jury instruction."). The failure to instruct on a defense theory implicates due process only "if the theory is legally sound and evidence in the case makes it applicable." Clark v. Brown, 450 F.3d 898, 904-05 (9th Cir. 2006) (citation omitted); see also Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005); United States v. Sayetsitty, 107 F.3d 1405, 1413 (9th Cir. 1996) ("When the defense is permitted by law, however, the defense is entitled to have the jury consider it in order to determine whether

1   the government has proved all elements of the offense.").

2           Here, petitioner was not entitled to the "mistake in person" defense instruction because the

3   defense was not legally sound.  California law does not recognize a mistake of fact defense when

4   a criminal defendant is charged with sexual acts against a minor under the age of 14.  See

5   Christopher v. Hoshino, No. EDCV 12-2267 GAF (FFM), 2013 WL 6589551, at *6 (C.D. Cal.

6   Dec. 12, 2013) (citing People v. Olsen, 36 Cal.3d 638, 647 (1984); Burr v. Clay, No. ED CV 09-

7   1731-AHM (E), 2010 WL 1444530, at *9 (C.D. Cal. Mar. 9, 2010) ("Although California permits

8   reasonable 'mistake of age' defenses to statutory rape charges, most jurisdictions do not permit

9   any reasonable mistake of fact defenses to statutory rape charges (as to age or as to any other

10  element)."). The same holds for sexual offenses charged in federal court.  There is no clearly

11  established Supreme Court precedent holding that a criminal defendant has a constitutional right

12  to present a mistake of person defense to a charge of a lewd act upon a minor child.  See, e.g.,

13  United States v. Brooks, 841 F.2d 268, 269-70 (9th Cir. 1988); United States v. Juvenile Male,

14  211 F.3d 1169, 1171 (9th Cir. 2000).  In the absence of a constitutional right, the state court

15  decision rejecting petitioner's request for the instruction could not have been contrary to, or an

16  unreasonable application of clearly established federal law.[3]

17          In the traverse, petitioner cites cases noting that the "Supreme Court has repeatedly held

18  that the exclusion of critical evidence supportive of the defendant's defense may in particular

19  circumstances deprive a defendant of federal Constitutional rights, even in cases where there was

20  a correct application of state law."  (ECF No. 17 at 18-21.)  But here, petitioner does not argue

21  that he was prevented from introducing evidence.  To the contrary, petitioner testified to facts

22  _____

23  [3] Petitioner also claims that state court's exclusion of his "mistake in person" defense was an act
    that he could not have foreseen, "violating his rights to fair notice of the California criminal laws
24  and to be free from ex post facto judicial decision-making."  (ECF No. 1 at 22.)  In response,
    respondent argues that the state court's interpretation and application of its own law in no way is
25  an ex post facto decision.  (ECF No. 11 at 21, n.3.)  This Court agrees with respondent.  The state
    court concluded that, in light of the California Legislature's important public policies and the
26  California court's decisions, petitioner was not entitled to a mistake of identity instruction for
    sexual conduct with a minor child.  (ECF No. 12-12 at 17.)  The state court's interpretation did
27  not criminalize an act already performed; it merely applied existing precedent to reject plaintiff's
    claim.

28

1  supporting his defense, including that he went into the apartment to have sex with A.M. and

2  thought the victim was A.M. when he started to initiate sex.  (ECF No. 12-4 at 215-20.)  Rather,

3  the main problem with petitioner's claim is legal; he claims that "[w]hile the California Supreme

4  Court in *People v. Olsen*, 36 Cal.3d 638, 685 (1984), held the mistake of fact defense is not

5  available in section 288 cases, the court expressly limited the exception only to those cases where

6  the defendant claims a mistake as to the *age* of the victim – not as to the victim's *identity*." (ECF

7  No. 1 at 22; see also id. at 40 (claiming that "the court of appeal in this case extended a judicially-

8  created policy to deny a statutory defense in a way that has not been sanctioned by the California

9  Supreme Court or the state Legislature").)  The state court disagreed and determined that

10  California law does not allow a mistake in person defense to charges for lewd acts on a child

11  under the age of 14.  Because fairminded jurists could disagree on the correctness of the state

12  court's decision, Richter, 562 U.S. at 101, habeas relief is not warranted.

13         But even assuming the state court erred in failing to give the instruction, petitioner must

14  still show that the error had a substantial and injurious effect or influence on the jury's verdict.

15  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also Brown v. Davenport, 142 S. Ct. 1510,

16  1517 (2022).  As the trial court noted, petitioner's defense was ludicrous.  A.M. testified that she

17  was several years older, four inches taller, and 50 pounds heavier than the victim.  (ECF No. 12-4

18  at 290-91.)  Based on these physical discrepancies, the jury could have reasonably concluded that

19  petitioner could not have mistaken the victim for A.M.  Furthermore, A.M. testified that she never

20  invited petitioner to come into her family's apartment to have sex with her anytime her

21  boyfriend's truck was not around.  (Id. at 298.)  Petitioner has failed to show prejudice from the

22  alleged error.

23  VI.  Conclusion

24         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

25  habeas corpus be denied.

26         These findings and recommendations are submitted to the United States District Judge

27  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

28

19

1   after being served with these findings and recommendations, any party may file written

2   objections with the court and serve a copy on all parties.  Such a document should be captioned

3   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

4   he shall also address whether a certificate of appealability should issue and, if so, why, and as to

5   which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

6   applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

7   § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

8   service of the objections.  The parties are advised that failure to file objections within the

9   specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

10   F.2d 1153 (9th Cir. 1991).

11   Dated:  August 11, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

TAA/vasq0128.157

20